UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VADIM WOOLF, and
HELENA WOOLF,

        Plaintiffs,                    **DECISION AND ORDER**

        -v-                                      1:23-CV-1023 EAW

PRECISION TECHNOLOGIES LLC
and JTEKT NORTH AMERICA CORPORATION,

        Defendants.
_____

# **INTRODUCTION**

Plaintiffs Vadim Woolf ("Vadim") and Helena Woolf[1] (collectively, "Plaintiffs") brought this action against defendants Precision Technologies LLC ("Precision") and JTEKT North America Corporation ("JTEKT") (collectively, "Defendants") for personal injuries Vadim sustained while working as a temporary worker in Orchard Park, New York. (*See* Dkt. 1-2). Plaintiffs filed their complaint in New York State Supreme Court, Erie County. (*Id*.). On September 28, 2023, JTEKT filed a notice of removal to remove the case to the United States District Court for the Western District of New York. (*See* Dkt. 1). Presently before the Court is Plaintiffs' motion to remand (Dkt. 8) and JTEKT's motion

---

[1] "Helena Woolf" is named as "Helena Wolf" in the February 2023 and August 2023 complaints. Plaintiffs explain that "Immigration" misspelled her surname "Woolf" as "Wolf" and, as a result, her legal name is Helena Wolf, while her husband's name is spelled correctly as Vadim Woolf. (*See* Dkt. 16 at 2 n.1). It appears that Defendants misspelled Ms. Wolf's surname in the notice of removal, and therefore her name appears as "Helena Woolf" on the docket. For consistency purposes, the Court will refer to Ms. Woolf as referenced in the federal court docket.

- 1 -

for judgment on the pleadings (Dkt. 28). For the following reasons, Plaintiffs' motion for remand (Dkt. 8) is granted, and the case is remanded to Erie County Supreme Court. Because it lacks subject matter jurisdiction, the Court declines to rule on JTEKT's motion for judgment on the pleadings. (Dkt. 28).

## BACKGROUND

The following facts are drawn from Plaintiffs' complaint (Dkt. 1-2), the notice of removal (Dkt. 1), and the documents submitted in connection with the instant motion to remand.

Plaintiffs are husband and wife and reside in the County of Middlesex, Massachusetts. (Dkt. 1-2 at ¶ 1). Precision and JTEKT are in the business of selling machine tools, including the horizontal machine center model FH800SXi and its component parts. (*Id*. at ¶¶ 4-5). Defendants distributed a horizontal machine center model FH800SXi to Taylor Metalworks, Inc., located at 3925 California Road in Orchard Park, New York. (*Id*. at ¶¶ 6-7). On February 25, 2020, Vadim was working as a temporary worker at Taylor Metalworks. (*Id*. at ¶ 8). While working on the horizontal machine center model FH800SXi, he suffered a crushing injury, which caused him to sustain bodily injuries. (*Id*.).

## PROCEDURAL HISTORY

On February 16, 2023, Plaintiffs filed a complaint in Erie County Supreme Court, naming as defendants JTEKT Corporation, JTEKT Toyoda Americas Corporation, and JTEKT Machinery Americas Corporation, Individually and as Successor in Interest to JTEKT Toyoda Americas Corporation (collectively, the "JTEKT entities"), and Taylor

Metalworks, Inc. and Taylor-Pohlman, Inc., n/k/a Taylor Metalworks, Inc. (collectively, "Taylor Metalworks"). (Dkt. 13 at ¶ 10; *see also* Dkt. 13-2). The Court refers to this action herein as the "February 2023 complaint" or "the first action."

Then, on August 2, 2023, Plaintiffs filed an action against Precision and JTEKT in Erie County Supreme Court (hereinafter, the "instant action" or "the August 2023 complaint"). (Dkt. 1 at ¶ 2; Dkt. 1-2). The August 2023 complaint arose out of the same February 25, 2020 incident giving rise to the February 2023 complaint. (*See* Dkt. 13 at ¶ 11; *compare* Dkt. 1-2 *with* Dkt. 13-2). Precision filed its answer to the August 2023 complaint on September 27, 2023 (Dkt. 1-5 at 3-8), and JTEKT received notice of service of Plaintiffs' complaint via United States mail on August 29, 2023 (Dkt. 1 at ¶ 4). On September 8, 2023, in the first action, Plaintiffs filed a motion to consolidate the February 2023 complaint and the August 2023 complaint based on the commonality of facts in both actions. (Dkt. 13 at ¶ 12; *see also* Dkt. 13-3).

On September 28, 2023, JTEKT filed a notice of removal as to the August 2023 complaint, alleging that diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. (Dkt. 1). JTEKT alleges that complete diversity exists because Plaintiffs are citizens of Massachusetts; Precision is a limited liability company, whose members all reside in states other than Massachusetts; and JTEKT is a corporation incorporated in South Carolina, with a principal place of business in South Carolina. (*Id*. at ¶ 8). JTEKT further alleges that the amount in controversy exceeds $75,000 (*id*. at ¶ 9), and that counsel for Precision consented to removal to federal court (*id*. at ¶ 13). The February 2023 complaint has not been removed to federal court, and that action remains pending in Erie County Supreme

Court. (*See* Dkt. 16 at 4). Thereafter, on October 5, 2023, JTEKT filed an answer to Plaintiffs' complaint and a cross-claim against Precision. (*See* Dkt. 4).

Plaintiffs timely filed their motion to remand on October 24, 2023, citing to the forum defendant rule. (*See* Dkt. 8-5). Specifically, because Precision is a citizen of New York, and a party in interest who was properly joined, served, and has appeared, removal to federal court is not proper. (*Id.*; *see also* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of [diversity jurisdiction] . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.")).

JTEKT filed response papers on November 14, 2023 (Dkt. 12; Dkt. 13), and Precision joined in JTEKT's arguments opposing remand (Dkt. 15). In its response, JTEKT does not dispute that Precision is a citizen of New York—and in fact, Precision admitted its New York citizenship in its answer filed in response to Plaintiffs' complaint. (Dkt. 12 at 7; *see also* Dkt. 1-5 at 3). Nor does JTEKT dispute that Precision was properly served before the matter was removed. (Dkt. 12 at 7). But JTEKT argues that Precision "has not been joined in good faith and for that reason should not be considered in determining the right to remove." (*Id.* (quoting *CAV Farms, Inc. v. Nicholas*, 19-CV-6088 CJS, 2019 WL 1438776, at *5 (W.D.N.Y. Apr. 1, 2019)).

Plaintiffs filed reply papers in further support of remand on November 21, 2023. (Dkt. 16). In connection with their reply, Plaintiffs also request that if the Court was inclined to deny the motion to remand, that they be permitted to join the defendants they

- 4 -

named in the February 2023 complaint. (*Id*. at 5, 10). With the Court's permission, JTEKT filed a sur-reply on December 6, 2023. (Dkt. 23; Dkt. 25).

On November 27, 2023, the Court issued a Text Order, explaining that Precision's corporate disclosure statement filed at Docket 14 was deficient. (Dkt. 17). The Court noted that because Precision was a limited liability company, the corporate disclosure statement must identify the citizenship of all its members. (*Id*. (citing Fed. R. Civ. P. 7.1(a)(2) ("In an action in which jurisdiction is based on diversity under 28 U.S.C. § 1332(a), a party or intervenor must, unless the court orders otherwise, file a disclosure statement. The statement must name--and identify the citizenship of--every individual or entity whose citizenship is attributed to that party or intervenor.")). The Court directed that on or before December 4, 2023, Precision file an amended corporate disclosure statement properly identifying the citizenship of all its members. (*Id*.). Precision filed its amended corporate disclosure statement on November 27, 2023, clarifying that it is owned by a single member who is a citizen of New York. (Dkt. 18).

Thereafter, on December 21, 2023, JTEKT filed a motion for judgment on the pleadings. (Dkt. 27; Dkt. 28; Dkt. 29). Plaintiffs filed response papers on January 11, 2024. (Dkt. 31; Dkt. 32).

**DISCUSSION**

Because it implicates the Court's jurisdiction to preside over this matter, the Court turns first to Plaintiffs' motion for remand.

### I. Motion for Remand

#### A. Legal Standard

28 U.S.C. § 1447(c) authorizes federal courts to remand a case "'on the basis of any defect in removal procedure' or because 'the district court lacks subject matter jurisdiction.'" *LaFarge Coppee v. Venezolana De Cementos, S.A.C.A.*, 31 F.3d 70, 72 (2d Cir. 1994) (quotation and citation omitted). "Removal jurisdiction must be strictly construed, both because federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns." *In re NASDAQ Market Makers Antitrust Litig.*, 929 F. Supp. 174, 178 (S.D.N.Y. 1996); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." (citation omitted)).

On a motion to remand, the burden is on the party seeking to maintain the matter in federal court to demonstrate that removal was proper. *Hodges v. Demchuk*, 866 F. Supp. 730, 732 (S.D.N.Y. 1994); *see also Blockbuster, Inc. v. Galeno,* 472 F.3d 53, 57 (2d Cir. 2006) ("It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction."). Moreover, "the party seeking remand is presumed to be entitled to it unless the removing party can demonstrate otherwise," *Bellido-Sullivan v. Am.*

*Int'l Grp., Inc.*, 123 F. Supp. 2d 161, 163 (S.D.N.Y. 2000), and "[a]ny doubts as to removability should be resolved in favor of remand," *Payne v. Overhead Door Corp.*, 172 F. Supp. 2d 475, 477 (S.D.N.Y. 2001).

In resolving a motion to remand, the Court treats all facts alleged in the complaint as true. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 205-06 (2d Cir. 2001) ("A case is removable when the initial pleading enables the defendant to intelligently ascertain removability from the face of such pleading, so that in its petition for removal, the defendant can make a short and plain statement of the grounds for removal as required by 28 U.S.C. § 1446(a)." (alteration, quotations, and citation omitted)); *see also Deutsche Bank Nat'l Tr. Co. v. LeTennier*, No. 3:24-cv-00564 (BKS/ML), 2024 WL 3043429, at *1 (N.D.N.Y. June 18, 2024) ("When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff." (citation omitted)).  The Court may also consider documents outside the pleadings submitted in connection with a motion to remand. *See Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010) ("if subject matter jurisdiction is contested, courts are permitted to look to materials outside the pleadings," including "documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis"); *see also Wachtell, Lipton, Rosen, & Katz v. CVR Energy, Inc.*, 18 F. Supp. 3d 414, 416 n.2 (S.D.N.Y. 2014) (relying on, in addition to the complaint, documents submitted in connection with removal and the motion to remand).

B.   **Diversity Jurisdiction**

The parties do not dispute that Plaintiffs are citizens of Massachusetts, that Precision is a citizen of New York, and that JTEKT is a citizen of South Carolina. It is also undisputed that the amount in controversy exceeds $75,000. Nor does JTEKT appear to dispute that Precision, if properly joined, would defeat diversity jurisdiction under the forum defendant rule. (*See* Dkt. 12 at 7). Accordingly, the central issue before the Court is whether Precision is a properly joined defendant for diversity purposes, or whether it was fraudulently joined.

C.   **Fraudulent Joinder**

JTEKT argues that the forum defendant rule should not apply because Precision was fraudulently joined and should not be considered in determining the right to remove. (*Id.* at 7-8; *see also Pullman Co. v. Jenkins*, 305 U.S. 534, 541 (1939) ("It is always open to the non-resident defendant to show that the resident defendant has not been joined in good faith and for that reason should not be considered in determining the right to remove.").

1.   **Standard**

"Under the doctrine of fraudulent joinder, courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court." *Castillo v. BJ's Wholesale Club*, 645 F. Supp. 3d 85, 89 (E.D.N.Y. 2022) (quotations and citation omitted). "The doctrine is designed to prevent plaintiffs from defeating a federal court's diversity jurisdiction or a defendant's right to removal by joining parties with no genuine connection to the controversy as defendants." *Id.*; *see also Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, 712 F.

App'x 85, 86 (2d Cir. 2018) ("It is well established in this Circuit that a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as a defendant a party with no real connection with the controversy." (quotations, citation, and alterations omitted)).

"The defendant seeking removal bears a heavy burden of proving fraudulent joinder by clear and convincing evidence." *Id.* (quotations and citation omitted); *see also Kuperstein v. Hoffman-Laroche, Inc.*, 457 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) ("The defendant seeking removal bears a heavy burden of proving fraudulent join[d]er, and all factual and legal issues must be resolved in favor of the plaintiff." (citation omitted)). "The fraudulent joinder standard is strictly applied by courts in this Circuit." *Mihok v. Medtronic, Inc.*, 119 F. Supp. 3d 22, 34 (D. Conn. 2015).

"Fraudulent joinder can be established one of two ways: (1) by showing fraud in the plaintiff's pleadings, or (2) by demonstrating 'that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court.'" *Rosenfeld v. Lincoln Ins. Co.*, 239 F. Supp. 3d 636, 638-39 (E.D.N.Y. 2017) (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)); *see also Castillo*, 645 F. Supp. 3d at 90 (explaining that the defendant must demonstrate "outright fraud" in the plaintiff's pleadings, or that there is "no possibility, based on the pleadings" that the plaintiff could state a claim against the non-diverse defendant in state court).

As for the second showing, "[a]ny possibility of recovery, even if slim, militates against a finding of fraudulent joinder; only where there is 'no possibility' of recovery is such a finding warranted." *Ehrenreich v. Black*, 994 F. Supp. 2d 284, 289 (E.D.N.Y. 2014);

*see also DNJ Logistic Grp. Inc., v. DHL Exp. (USA), Inc.*, 727 F. Supp. 2d 160, 165 (E.D.N.Y. 2010) ("[E]ven if there is doubt as to whether a complaint would survive a motion to dismiss in state court, this doubt does not preclude remand. To the contrary, given the heavy burden on a party advocating removal on the ground of fraudulent joinder, it is only in the situation where 'state case law or legislation removes all reasonable possibility that the plaintiff would be permitted to litigate the claim' that remand should be denied." (citation omitted)). "[T]he Court must resolve all factual and legal issues in favor of the plaintiff. The issue is not whether the plaintiff is likely to prevail against the non-diverse defendant, but whether the pleading sets forth any possible claim under state law." *Rosenfeld*, 239 F. Supp. 3d at 639 (citations omitted).

Finally, in assessing fraudulent joinder, the court may consider documents outside the pleadings. *See MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 395 (S.D.N.Y. 2009).

### 2. The parties' arguments

In support of its contention that Precision was fraudulently joined, JTEKT raises two arguments: (1) Plaintiffs have engaged in "claim splitting"; and (2) Precision is a pass-through distributor and should be disregarded as a nominal party. (Dkt. 12 at 8-14). As for the claim splitting argument, JTEKT argues that Plaintiffs have filed two lawsuits—namely, the February 2023 complaint and the August 2023 complaint—both of which seek the same relief. (*See* Dkt. 13 at ¶¶ 10-11). With respect to its contention that Precision should be disregarded because it is a nominal party, JTEKT contends that Precision "was merely a pass-through distributor of the HMC-FH800SXI horizontal machine center," and

"issued a purchase order to Toyoda Americas Corp. . . . for the FH800SX horizontal machining center and had it **shipped directly** to Taylor Metal Works, Inc. without receiving the product, evaluating the product or altering the product. . . ." (Dkt. 12 at 13).

In response to JTEKT's fraudulent joinder arguments, Plaintiffs concede that both the February 2023 complaint and the August 2023 complaint arise from the same occurrence. Plaintiffs explain that, before JTEKT removed this matter, Plaintiffs filed a motion to consolidate the cases. (Dkt. 13-3; *see also* Dkt. 16 at 3). In their motion to consolidate, Plaintiffs explained that the actions arose from the same occurrence, but were filed separately:

> due to the outstanding Japanese service via the Hague, because had plaintiffs amended their complaint to add the new defendants in the second action they would have been required to restart the Hague service and incurred additional inordinate costs, and to proceed with discovery on these matters separately would unquestionably lead to unnecessary costs and delay.

(Dkt. 13-3 at ¶ 11). Plaintiffs argue that New York precedent favors resolution of related issues in one trial, and that by having two separate actions in state and federal court arising from the same incident, with multiple JTEKT defendants, there is a risk of inconsistent verdicts. (Dkt. 16 at 4). Plaintiffs request that if the Court determines that Precision should be disregarded as a diversity-destroying defendant, they have permission to join the defendants from the February 2023 complaint to this action and, because some of these defendants are New York citizens, that the action be remanded to state court. (*Id*. at 5).

### 3.  JTEKT has failed to show by clear and convincing evidence that Precision was fraudulently joined

#### a.  Fraud in the pleadings

The Court turns to the first means by which a party may establish fraudulent joinder, which is by showing fraud in a plaintiff's pleadings.  *See Rosenfeld*, 239 F. Supp. 3d at 638-39.  Other than to make the conclusory assertion that "[i]t is clear the Plaintiffs asserted these broad strict liability and negligence causes of action against Precision in order to destroy diversity jurisdiction" (Dkt. 12 at 14), Defendants come forward with nothing establishing that Precision was fraudulently joined to defeat diversity.  Plaintiffs allege against Precision causes of action for both negligence and strict products liability.  (Dkt. 1-2 at 4-5, 6-7).  Plaintiffs allege that Precision "designed, manufactured, assembled, constructed, modified, maintained, installed, repaired, supplied, distributed, sold, brokered, and/or leased, and/or placed on the market . . . a certain HMC-FH800SXi machine tool to Taylor Metalworks, Inc. located at 3925 California Road in the Town of Orchard Park, County of Erie and State of New York."  (*Id*. at 3).  JTEKT does not argue that Precision has no connection to the controversy.  Nor does JTEKT dispute that Precision was involved in the distribution of the machine at issue—rather, JTEKT disputes the nature of Precision's involvement.  (*See* Dkt. 12 at 13-14).  Before the case was removed to federal court, Precision filed an answer, rather than a motion to dismiss (*see* Dkt. 1-5 at 3-8), and then JTEKT filed a cross-claim against Precision for contribution and/or indemnification (Dkt. 4 at 7)—underscoring that Precision has at least some connection to Plaintiffs' case. In other words, neither the pleadings nor the record before the Court support that Plaintiffs'

naming Precision in the complaint amounts to "outright fraud." It is JTEKT's burden to make such a showing by clear and convincing evidence, and it has failed to do so. Accordingly, the Court declines to find fraudulent joinder on this basis.

### b. No possibility that Plaintiffs can state a cause of action against Precision in state court

The Court turns next to the second means by which to establish fraudulent joinder—that is, by showing by clear and convincing evidence that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court. *See Rosenfeld*, 239 F. Supp. 3d at 638-39. Again, Defendants have failed to make the requisite showing.

"[C]ourts apply the state pleading rules relevant to the particular pleading at issue in deciding whether a plaintiff could have asserted a viable claim in state court based on that pleading." *MBIA Ins. Corp.*, 706 F. Supp. 2d at 394. As relevant here, "New York has liberal pleading rules." *Id.*; *see also Locicero v. Sanofi-Aventis U.S. Inc.*, No. 08-CV-489S, 2009 WL 2016068, at *6 (W.D.N.Y. July 10, 2009) ("Under New York law, a complaint is to be afforded a liberal construction. We accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory. The criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one." (quotations, citation, and alterations omitted)).

As explained above, Plaintiffs allege that Precision "designed, manufactured, assembled, constructed, modified, maintained, installed, repaired, supplied, distributed, sold, brokered, and/or leased, and/or placed on the market" a machine that allegedly injured

Plaintiff. Although these are broad allegations, given New York's liberal pleading rules, the Court cannot find no possibility that Plaintiffs can state a cause of action against Precision in state court. *See, e.g.*, *Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 329 (S.D.N.Y. 2007) ("[T]he Court finds that plaintiffs' allegations—that their respective injuries were 'proximately caused by the defendants' negligent actions in that . . . they negligently designed, processed, manufactured, packaged, distributed, delivered and/or installed the asbestos-containing products to which the plaintiff was exposed . . .'— are more than adequate to withstand defendant's assertion of fraudulent joinder."); *Vasura v. Acands*, 84 F. Supp. 2d 531, 539 (S.D.N.Y. 2000) (broad allegations that the defendants "produced, manufactured, specified, supplied, installed or distributed" the product to which the plaintiff was exposed was sufficient to state a claim).

In its response to Plaintiffs' motion to remand, JTEKT argues that although Precision is a distributor in the stream of commerce, in the present matter it is nothing more than a pass-through distributor with no direct access to the subject product and it did not alter the product in any way. (Dkt. 12 at 13-14). In support of this assertion, JTEKT cites to purchase orders for the machine at issue. (*See* Affirmation of Stuart H. Sostmann, Esq., Exh. D (Dkt. 13-4)). The exhibit includes two purchase orders, the first of which says, "Precision Technologies LLC" at the top, and indicates that the "Vendor" is "Toyoda Americas Corp.," and that the machine was shipped to "Taylor Metalworks Inc." (Dkt. 13-4 at 1-3). The other purchase order lists "TMi Taylor Metalworks, Inc.," at the top, "Precision Technologies LLC" as the "Vendor," and states that the machine was shipped to "Taylor Metalworks, Inc." (*Id*. at 4). While the purchase orders appear to list the product

descriptions, the associated prices, and the payment terms, they do not include any information about Precision's role in handling the machine at issue. This information, standing alone, is insufficient to establish by clear and convincing evidence that Plaintiffs can state no cause of action against Precision.

JTEKT also argues that the Court should disregard Precision as a party pursuant to New York's rule against "claim splitting," citing *CAV Farms, Inc. v. Nicholas*, 19-CV-6088 CJS, 2019 WL 1438776 (W.D.N.Y. Apr. 1, 2019), and arguing that "a fraudulent joinder argument can be sustained by New York's rule against 'claim splitting.'" (Dkt. 12 at 8). JTEKT argues that Plaintiffs' August 2023 complaint (wherein Precision is named as a defendant) is duplicative of the February 2023 complaint, and the rule against claim splitting prevents Plaintiffs from maintaining their claims against Precision. (*Id*. at 9-12).

Claim splitting "is best understood as a species of the genus *res judicata*, and it thus derives its conceptual force from the principle that the public interest demands that a party not be heard a second time on a cause of action or an issue which he has already had an opportunity to litigate." *CAV Farms, Inc.*, 2019 WL 1438776, at *6 (citation omitted). "A party invoking the narrow doctrine against splitting a cause of action must show that the challenged claim raised in the second action is based upon the same liability in the prior action, and that the claim was ascertainable when the prior action was commenced. However, if the liabilities or claims alleged in the two actions arise from different sources, instruments, or agreements, the claim splitting doctrine does not apply." *Id*. at *7 (citation omitted). In *Cav Farms*, the plaintiff filed a state court action for damages it sustained due to having reasonably relied on false representations concerning the purchase of cattle. *Id*.

The plaintiff later filed another complaint, alleging that the defendants used improper and/or illegal means to interfere with plaintiff's supplier agreement with an online grocer, to replace the plaintiff as the grocer's supplier of grass-fed beef. *Id*. The court noted that while the claims were similar in that they involved the same parties and arose out of CAV's attempt to supply beef to the online grocer, the two actions were based on different tortious conduct that occurred at different times, and therefore removal of the action to federal court was improper to the extent it was based on the alleged fraudulent joinder of a non-diverse defendant. *Id*.

Defendants have fallen short of demonstrating that Plaintiffs have engaged in claim splitting to obtain the proverbial second bite at the apple on their personal injury claims. In fact, the information before the Court demonstrates the very opposite—that Plaintiffs sought to *join* the actions before Erie County Supreme Court, so that their claims would not be litigated on two separate occasions. (*See, e.g.*, Dkt. 13-3; *see also* Dkt. 16 at 4 ("Plaintiffs are concerned that by having two separate actions in state and federal court arising from the same incident with multiple JTEKT defendants, there is a risk of inconsistent verdicts and that the JTEKT defendants will attempt to shift responsibility from each other and/or utilize the 'empty chair' defense.")). In addition, JTEKT has failed to show by clear and convincing evidence that Plaintiffs' claims against Precision were ascertainable when the February 2023 complaint was filed. Rather, the only information before the Court is that Plaintiffs filed a separate action against Precision and then sought


to join the actions thereafter.[2]  For those reasons, the Court is not persuaded by JTEKT's argument with respect to claim splitting.

The existence of the parallel February 2023 complaint pending in state court further counsels in favor of remand.  JTEKT did not disclose the existence of the February 2023 complaint when it sought to remove this case, and it was not until after Plaintiffs filed their motion for remand that the Court become aware that another related action was pending in state court.  Both parties agree that the February 2023 complaint and the instant case involve the same incident and injury to Plaintiff.  (*See* Dkt. 12 at 9 (JTEKT noting that the facts giving rise to both actions are "identical"); Dkt. 16 at 3 (Plaintiffs explaining that they sought consolidation because "the actions arose from the same occurrence")).  Further, Plaintiffs filed a motion to consolidate the actions in the earlier case, which was pending at the time JTEKT sought removal.  (*See* Dkt. 16 at 1).  "With joinder, the cases can be consolidated and resolved together.  While . . . this will not necessarily happen upon remand to New York State Court, New York precedent favors consolidation in cases like this."  *Barber v. Somal Logistics Ltd.*, No. 20-CV-854S, 2021 WL 2159646, at *4

---

[2]  JTEKT argues that Plaintiffs knew or should have known to sue Precision at the time it filed the first action because Precision was listed on the purchase orders.  (*See* Dkt. 12 at 12; *see also* Dkt. 25 at 6-7).  But there is no information before the Court as to when these documents were first produced to Plaintiffs, or when this information was discovered by Plaintiffs.  Moreover, as already discussed, the purchase orders do not disclose the role Precision played in the handling the machine at issue, so to suggest that the purchase orders provided some insight into Precision's involvement is not borne out by the record before the Court.

(W.D.N.Y. May 27, 2021).³  To allow one action to proceed in federal court, and another to proceed in state court, runs the risk of inconsistent verdicts.

Finally, in connection with their motion to remand, Plaintiffs have requested that the Court consider awarding attorney's fees and costs pursuant to 28 U.S.C. § 1447(c). (*See* Dkt. 8-5 at 2-3).  Pursuant to § 1447(c), "[a]n order remanding the case *may* require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c) (emphasis added).  Other than stating that "the Court should consider awarding plaintiffs their attorneys' fees and costs," Plaintiffs do not make any meaningful argument as to why the Court should award them their fees and costs. Accordingly, the request for attorney's fees and costs is denied.

In sum, JTEKT has failed to show by clear and convincing evidence that Precision was fraudulently joined to defeat diversity jurisdiction.  Because Precision is a New York citizen, the Court lacks subject matter jurisdiction over this matter pursuant to the forum defendant rule.  Accordingly, Plaintiffs' motion for remand (Dkt. 8) is granted.

---

³ As noted above, Plaintiffs include in their reply memorandum a request that the Court join non-diverse defendant Taylor Metalworks, Inc. in the instant action and remand the action to state court, since Taylor Metalworks is also a New York citizen.  (Dkt. 16 at 5; *see also* 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.")).
Because the Court finds that remand is appropriate, it does not reach the issue of whether joinder of Taylor Metalworks is proper.  That matter has been briefed and is currently pending before the state court.  In addition, even if the Court retained jurisdiction, this request for joinder is not properly made by way of formal motion and therefore it does not comply with Rule 7 of this Court's Local Rules of Civil Procedure.

## II.    **JTEKT's Motion for Judgment on the Pleadings**

JTEKT has also filed a motion for judgment on the pleadings. (Dkt. 28). JTEKT argues that Plaintiffs' claims against it are barred by the New York Workers' Compensation Law, Section 11. (Dkt. 29 at 6). Because the Court has determined that it lacks jurisdiction over this matter and that remand is appropriate, the Court declines to rule on JTEKT's motion for judgment on the pleadings.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for remand (Dkt. 8) is granted, and the case is remanded to the New York State Supreme Court, County of Erie. The Clerk of Court is instructed to mail a certified copy of this Decision and Order, with a clear reference to Supreme Court, County of Erie, Index. No. 809754/2023 to the clerk of the state court, and then to close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 18, 2024
      Rochester, New York